UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO CARTAGENA,<br><br>Defendant. | No. 2:18-cr-00166-TLN<br><br>**ORDER** |

This matter is before the Court on the Government's Motion for Revocation of the Magistrate Judge's Order Authorizing Defendant Eduardo Cartagena's ("Defendant") Pretrial Release. (ECF No. 42.) Defendant filed an opposition. (ECF No. 46.) The Government did not file a reply. For the reasons set forth below, the Court DENIES the Government's motion.

///
///
///
///
///
///
///
///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant is charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  (ECF No. 5 at 10–12.)  Defendant was arraigned and pleaded not guilty on December 19, 2019.  (ECF No. 27.)  During the proceeding, the Government moved for detention, and Defendant submitted on the issue of detention without prejudice.  (*Id.*)  Since then, Defendant has been confined at Sacramento County Jail.

On May 4, 2020, Defendant moved for bail review based on his health concerns related to the COVID-19 pandemic.  (ECF No. 36.)  In opposition, the Government argued Defendant should remain in custody because he is a flight risk.  (ECF No. 37.)  The magistrate judge held a hearing on May 7, 2020.  After considering the parties' arguments, the magistrate judge ordered Defendant released on two separate bonds: (1) a $100,000 unsecured bond co-signed by Defendant's mother; and (2) a $100,000 bond secured by the equity in Defendant's uncle's home.[1]  (ECF No. 38.)  The magistrate judge also ordered Defendant to be placed in the custody of his uncle and imposed several special conditions of release, including home detention and electronic monitoring.  (*Id.*; *see also* ECF No. 39.)

The Government filed the instant motion to revoke the magistrate judge's order of release on May 12, 2020.  (ECF No. 42.)  Defendant filed an opposition on May 18, 2020.  (ECF No. 46.)  The Government did not file a reply.

### II.    STANDARD OF LAW

"If a person is ordered released by a magistrate judge . . . the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."  18 U.S.C. § 3145(a).  The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).  "[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate."  *Id.*

---

[1] If the equity in the home does not cover the entire $100,000, the remaining is to be unsecured and signed by Defendant's uncle.  (ECF No. 38.)

### III. ANALYSIS

The Government argues Defendant should be detained because he is a significant flight risk and the proposed bond conditions will not reasonably assure his appearance. (ECF No. 42 at 8.) Alternatively, the Government moves for temporary detention pending the compilation of a substantially stronger bond package. (*Id.* at 13.) In opposition, Defendant contends the Court should affirm the magistrate judge's release order and conditions because the Government has failed to meet its burden for detention. (ECF No. 46 at 2.)

When the Government seeks to detain someone as a flight risk, it must demonstrate "by a preponderance of the evidence that no condition or combination of conditions will reasonably assure [the defendant's] appearance." *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). In determining whether there are conditions of release that will reasonably assure the appearance of Defendant as required, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against Defendant; (3) Defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community posed by Defendant's release. *Id.*; 18 U.S.C. § 3142(g). The Court will address the § 3142(g) factors in turn.

#### A.  Nature and Circumstances of the Offense

The Government argues Defendant's offense involves a scheme to internationally launder the proceeds of fraud committed against elderly victims in the United States. (ECF No. 42 at 9.) The Government emphasizes Defendant was in the process of arranging to launder approximately $130,000 in proceeds from those victims when agents caught him, and Defendant told an undercover agent he wanted help moving an additional $200,000 in proceeds. (*Id.*)

The mere fact that Defendant's offense involved laundering a substantial amount of fraud proceeds does not necessarily increase Defendant's risk of flight to the point where no conditions of release can reasonably assure his appearance. Although the Government alludes to Defendant's "overseas connections" and financial accounts, the Government fails to provide evidence that Defendant has access to funds or international connections that make him more likely to flee. (*See id.* at 11.) Therefore, this factor weighs in favor of release.

3

### B. Weight of the Evidence

The Government argues the weight against Defendant is strong. (*Id.* at 9.) More specifically, the Government contends Defendant admitted his role in the money laundering scheme during interviews with agents, he was recorded on a call with an undercover agent arranging the money laundering, and other evidence in the case "strongly corroborates" Defendant's knowing participation in the scheme. (*Id.*) Defendant does not respond to the Government's argument. Based on the record before the Court, the strength of the evidence against Defendant weighs against release. However, the Court notes this factor carries the least force in the § 3142(g) analysis due to the presumption of innocence. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *see also United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### C. History and Characteristics of Defendant

The Government argues the history and characteristics of Defendant support detention. (ECF No. 42 at 9.) The Government argues Defendant, as a dual citizen of Canada and Colombia, has substantial international ties. (*Id.* at 8.) The Government further argues that, despite having an expired passport, it would be easy for Defendant to disappear to Canada, Mexico, or even within the United States. (*Id.* at 8–9.) Moreover, the Government argues other than Defendant's uncle, Defendant has no family, employment, legitimate financial resources, or community ties to any district in the United States. (*Id.* at 10.)

According to the Government, Defendant has serious incentive to disappear because he is facing a charge that carries a 20-year statutory maximum sentence. (*Id.* at 9.) The Government also emphasizes this is Defendant's second federal fraud case. (*Id.*) In 2000, Defendant was convicted of 10 counts of wire fraud relating to an international telemarketing fraud scheme. (*Id.* at 9–10.) Defendant was sentenced to 70 months, and the Government asserts Defendant returned to fraud and money laundering shortly after his release and still owes almost half a million dollars of restitution. (*Id.* at 9–10.) Finally, the Government states locating Defendant in Colombia and extraditing him to the United States to face charges in the instant case took a considerable amount of time and resources for both Colombian and American law enforcement officials. (*Id.*)

///

Although Defendant arguably has an incentive to flee, his history and characteristics do not suggest that he will. The Government has not provided this Court with any evidence that Defendant intentionally evaded authorities prior to his arrest or that he delayed his extradition. To the contrary, the Government admits Defendant did not contest his extradition. (ECF No. 42 at 6.) Moreover, the pretrial services officer has indicated Defendant was successful on release before his previous trial in 2000 and there are no known failures to appear on his record. The pretrial services report also indicates Defendant does not own a valid passport and is willing to submit to location monitoring. For these reasons, this factor weighs in favor of release.

### D. Nature and Seriousness of Danger Posed by Defendant's Release

According to the Government, Defendant poses a danger to the community in that there is a risk he will resume his schemes to deprive elderly victims of significant amounts of money. (ECF No. 42 at 10.) Defendant does not respond to the Government's argument. However, the Government's bald statement is insufficient to show there are no conditions of release that could reasonably prevent Defendant from engaging in additional fraud crimes. To the contrary, home detention and location monitoring will reasonably assure that Defendant is prevented from engaging in further fraud. Therefore, this factor weighs in favor of release.

In sum, all of the § 3142(g) factors — aside from the weight of the evidence, which carries the least force — weigh in favor of release. As such, the Government has not met its burden to show, by a preponderance of the evidence, there are no conditions or combination of conditions that will reasonably assure Defendant's future appearance. *See Motamedi*, 767 F.2d at 1405 ("Only in rare circumstances should release be denied . . . [and] [d]oubts regarding the propriety of release should be resolved in favor of the defendant."). As already discussed, the magistrate judge imposed a stringent bond package, including home detention, electronic monitoring, and two $100,000 bonds that will likely financially ruin Defendant's mother and uncle if Defendant fails to appear. The Court agrees those conditions are sufficient to reasonably assure Defendant's future appearance. *See Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) ("[T]he Bail Reform Act of 1984 . . . mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of

the person as required."); *see also United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) ("[T]he Bail Reform Act contemplates only that a court be able to 'reasonably assure,' rather than guarantee, the safety of the community.").

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Government's Motion for Revocation of the Magistrate Judge's Order Authorizing Defendant's Pretrial Release. (ECF No. 42.)

IT IS SO ORDERED.

DATED: May 28, 2020

Troy L. Nunley
United States District Judge